FRANCIS A. CUNDILL, Appellant, *v.* JOHN B. LEWIS, Respondent.

Contract — sale — warehousemen — inference that warehouseman, without surrender of non-negotiable warehouse receipt, promised to hold stored goods for purchaser not drawn from mere acceptance of check for storage charges — action to recover for failure of seller to deliver goods — plaintiff entitled to direction of verdict — inadequacy of charge immaterial.

1. An inference that a warehouse company has promised, without indorsement and surrender of a non-negotiable warehouse receipt, to hold stored goods on behalf of plaintiff, who had purchased the goods from the owner, will not be drawn from the mere fact that it accepted a check from plaintiff for a month's storage charges, where it had never been informed of the purchase or that plaintiff held a delivery order from the owner.

2. In an action, therefore, to recover from the seller the value of the goods on the ground that when plaintiff presented the delivery order the goods could not be found in the warehouse and he, therefore, never received the same, it must be held, as matter of law, that the warehouse company never acknowledged that it held the goods on behalf of plaintiff within the meaning of subdivision 3 of section 124 of the Personal Property Law (Cons. Laws, ch. 41) requiring such an acknowledgment to fulfill the seller's obligation to deliver goods in the possession of a third party, and, where it appeared that defendant never made delivery, plaintiff was entitled to direction of a verdict in his favor. Inadequacy in the charge, therefore, was immaterial and did not justify reversal of a judgment entered upon a verdict for plaintiff.

*Cundill* v. *Lewis*, 219 App. Div. 742, reversed.

(Argued May 19, 1927; decided June 7, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 28, 1927, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

*James Madison Blackwell* for appellant. As a matter of law, there was no evidence on the trial of an acknowl-

edgment by the bailee to the purchaser, pursuant to subdivision 3 of section 124 of the Personal Property Law. (*Edwards* v. *Meadows,* 71 Ala. 42; *Barney* v. *Brown,* 2 Vt. 374; *Weiss* v. *Housman,* 204 App. Div. 152; 236 N. Y. 620; *Robinson* v. *All Light Sales Co., Inc.,* 202 N. Y. Supp. 260; *Borrenco Importing Co.* v. *Sperber,* 205 App. Div. 417.)

*Frederick G. Rita* for respondent. The court's charge failed to adequately present the case to the jury. (*Alden* v. *Knights of Maccabees,* 178 N. Y. 536.)

Kellogg, J. The plaintiff and the defendant, on the 14th day of March, 1925, entered into a contract whereby the defendant agreed to sell and the plaintiff, under the name of Francis A. Cundill & Co., agreed to buy " 39 cases of 100 lbs. each of Japanese Refined Camphor in 2½ pound slabs, at 70 cents per pound, ex store, Brooklyn, N. Y. buyer to have the benefit of unexpired insurance and storage, terms net cash in five days." The camphor was at the time stored in a storehouse of the S. & S. Storage Warehouse Company located on Maspeth avenue, Brooklyn. On the day that the contract was made the defendant delivered to the plaintiff a warehouse delivery order reading as follows: " S. & S. Storage Warehouse, 1085 Grand Street, Brooklyn, N. Y. please deliver to Francis A. Cundill & Co. thirty-nine (39) cases Camphor Slabs 2½ lbs. W/R. #4297, Marks R C Numbers made in Japan C/101/150. (Free storage expires March 17th, 1925.) " The camphor had originally been stored at the warehouse of the S. & S. Storage Warehouse Company at 1085 Grand street. The defendant held a warehouse receipt from the company which stated that the camphor had been " received on storage 1085 Grand St. for account of John D. Lewis." The receipt named six different warehouses belonging to the company of which the Maspeth avenue warehouse was one. The camphor, in

November, 1924, had been removed from the Grand street warehouse to the Maspeth avenue warehouse. On the 21st day of March, 1925, the plaintiff paid to the defendant the sum of $2,730 which was the sum due the defendant for the camphor at the rate per pound named in the contract. As shown by the delivery order given to the plaintiff the storage charges on the camphor had been paid to March 17th, 1925, on which date the free storage conceded to plaintiff expired. On the 24th day of March, 1925, the plaintiff, or some one in his office, called the warehouse company on the telephone and asked what the charges were from the time of the unexpired storage to date. An officer of the company replied that the storage charges to April 17th would be $1.95. On the same date the plaintiff wrote the warehouse inclosing a check for $1.95 and saying, " We are enclosing herewith our check for $1.95 to cover storage for one month on 39 cases of camphor in your warehouse." The evidence showed that the 39 cases of camphor were in storage at the Maspeth avenue warehouse on March 25th, 1925. It likewise showed that the camphor had disappeared, through theft or otherwise, from the warehouse prior to March 27th, 1925. On this date the plaintiff presented his delivery order and demanded the camphor. The camphor was not delivered to him and he has never received actual possession of the same. He brought this action to recover the value of the camphor on March 27th, the day when he made demand therefor, alleging in his complaint that the defendant had broken his contract to sell and deliver the camphor. All of the foregoing facts are undisputed. The case was submitted to a jury which returned a verdict for the plaintiff of $3,315. That sum represented the value of the camphor on March 27th, 1925, plus interest. The judgment entered upon the verdict was reversed by the Appellate Division, which, in a brief *per curiam*, said: " Judgment reversed upon

25

the law and the facts, and new trial granted, costs to abide the event. The question at issue on the trial was whether the third party in whose custody the goods were, had acknowledged to the buyer that it held the goods on the buyer's behalf. (Pers. Prop. Law, § 124, subd. 3.) That issue was not adequately presented to the jury by the charge of the court, and, therefore, in the interests of justice, we think a new trial should be granted." (219 App. Div. 742). The plaintiff thereupon appealed, specifying in his notice of appeal that "the said plaintiff hereby stipulates that if the said order be affirmed upon appeal, judgment absolute shall be rendered against him."

It is provided in section 124, subdivision 3, of the Personal Property Law (Cons. Laws, ch. 41) as follows: "Where the goods at the time of sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver to the buyer unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf." The subdivision applies to this case, for at the time of the sale the camphor was in the possession of a third person, the S. & S. Storage Warehouse Co., Inc. Did that company ever acknowledge to the plaintiff buyer that it held the camphor on his behalf? The receipt issued by the warehouse company certified that the camphor was held "for account of John D. Lewis." It was a non-negotiable receipt. (General Business Law [Cons. Laws, ch. 20], section 92.) The words "Non Negotiable" plainly appeared upon its face, as required by law. (Id., section 93.) Under these words appeared the following: "The above goods will not be delivered without proper endorsement and surrender of the receipt." A promise to hold the camphor on behalf of the plaintiff, who held no receipt and could surrender none, would have pledged the warehouse company to a violation of its express promise given to the depositor of the camphor. Moreover, the warehouse company would not have been legally justified in delivering the camphor

to any person other than the depositor or one having written authority from him. (Id., sections 96, 97.) The warehouse company was wholly ignorant of the fact that the plaintiff had a delivery order from the depositor. The plaintiff had never informed it that he had bought the camphor, that he was the owner thereof, or that he held a delivery order from the depositor. In the absence of such information, the making of a promise to hold the camphor on the plaintiff's behalf would have indicated a willingness on its part to violate the law. In default of facts, strongly persuasive to that end, we should not infer that the warehouse company, intending to violate its agreement and the law, made such a promise. Under the circumstances, such an inference could not properly be drawn from the mere fact that the warehouse company accepted a check from the plaintiff for a month's storage of the camphor. It may have thought that he was paying the debt of the defendant for storage. It may have purposed to hold the camphor for him on condition that he presented to it its warehouse receipt, properly indorsed, for surrender. In neither event could its act of accepting the check be construed as an unqualified acknowledgment that it held the camphor on the plaintiff's behalf. Therefore, we think that the warehouse company, as a matter of law, never acknowledged that it held the camphor on his behalf; that the defendant never delivered the camphor to him; that the plaintiff was entitled to a direction of a verdict in his favor for the sum found to be his due by the jury. In this view, if the charge of the trial judge was inadquate, its inadequacy was immaterial and the reversal was not justified.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in the Appellate Division and this court.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Ordered accordingly.