VIRGINIA ICE AND FREEZING CORPORATION, A DISSOLVED VIRGINIA CORPORATION, AND LACEY HODGES, JERRY W. EASTER, WALTER W. EASTER, HERMAN M. BEAM, AND WILLIAM C. FRENCH, ITS DIRECTORS, BY LAW AUTHORIZED AND CHARGED WITH RESPONSIBILITY FOR WINDING UP ITS AFFAIRS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64752. Filed September 26, 1958.

*P. A. Agelasto, Jr., Esq.*, for the petitioner.
*James A. Scott, Esq.*, for the respondent.

ARUNDELL, *Judge:* The respondent determined a deficiency in income tax for the taxable year ended December 31, 1954, in the amount of $10,017.76.

The issue involved is whether the respondent erred in disallowing a loss of $19,200.44 on the sales of certain properties claimed by petitioner on its corporation income tax return for the calendar year 1954 on the ground that in accordance with section 337 (a) of the Internal Revenue Code of 1954, such sales were made within the 12-month period beginning on the date of the adoption of a plan of complete liquidation and, under section 337 (a), no gain or loss could be recognized on such sales.

### FINDINGS OF FACT.

During the taxable year 1954, petitioner was a Virginia corporation with its principal office in Norfolk, Virginia. It filed a corporate Federal income tax return for said year with the district director of internal revenue at Richmond, Virginia.

The petitioner was dissolved on September 20, 1955, pursuant to the unanimous vote of its stockholders. The corporate existence of the petitioner is continued through its directors for the purposes of winding up its affairs.

During the year 1954 petitioner had outstanding all of its authorized common capital stock of 1,000 shares, 108 shares of which were held by Herman M. Beam, its then president, and 45 shares were held by William C. French, its then secretary. The remaining 847 shares were owned by 26 other individuals with addresses in Virginia, Georgia, Tennessee, Mississippi, Florida, and North Carolina.

During the taxable year 1954, petitioner owned and operated eight ice plants, one of which was located in Ocala, Florida, one in Portsmouth, Virginia, and the others in various locations in Virginia and Georgia.

During 1954 petitioner's board of directors consisted of Lacey Hodges, Jerry W. Easter, Walter W. Easter, Beam, and French.

The ice plant at Ocala, Florida, was sold at a loss of $11,774.88 on October 1, 1954, as the result of prior negotiations and agreement pursuant to resolutions adopted by petitioner's board of directors on October 1, 1954. The deed to the property was executed by petitioner on October 9, 1954, and the transaction entered on petitioner's books on October 9, 1954.

The ice plant at Portsmouth, Virginia, was sold at a loss of $7,425.56 on October 4, 1954, as the result of prior negotiations and agreement pursuant to resolutions adopted by petitioner's board of directors on October 4, 1954. Deed to this property was executed by the corporation on October 7, 1954, and the transaction entered on petitioner's books on October 10, 1954.

The 2 ice plants at Ocala and Portsmouth that were sold on October 1, 1954, and October 4, 1954, respectively, were properties that petitioner had used in its trade or business up to the date of the sale of such properties.

The ice business, due to increase in the use of mechanical means of refrigeration, had been declining 20 to 25 per cent each year since 1945. In 1951 petitioner had sold its plant in Chattanooga, Tennessee, at a profit of about $12,000. In 1952 petitioner had sold properties in Augusta, Georgia, Ocala, Florida, and Dublin, Georgia, at a profit of about $52,500. In 1953 petitioner had sold properties in Chattanooga, Tennessee, at a profit of about $26,600.

On October 1, 1954, petitioner's board of directors, after approving the sale of the Ocala, Florida, property, caused to be entered in petitioner's minute book a notice to themselves that there would be a meeting of the board on October 11, 1954.

On October 11, 1954, all of petitioner's board of directors except Jerry W. Easter met for the purpose of considering the liquidation of petitioner. At this meeting notices were sent to all of petitioner's stockholders that there would be a meeting of the stockholders on October 22, 1954, for the purpose of voting on a plan of liquidation of the petitioner.

Between October 13 and 21, 1954, both dates inclusive, proxies were received, made out to "H. M. Beam and/or W. C. French, or either of them," to represent the 26 stockholders holding 847 shares of petitioner's stock at a meeting of the stockholders of petitioner to be held on October 22, 1954, at Norfolk, Virginia. Among other things, the minutes of this meeting state:

A special meeting of the stockholders of Virginia Ice and Freezing Corporation was held at the principal office of the corporation in Norfolk, Virginia, this 22nd day of October 1954, after ten days' notice of the time and place and

purpose of the meeting had been published in the Norfolk Virginian-Pilot as required by law.

The Secretary reported that 1,000 shares of the outstanding capital stock of the corporation were represented in person or by proxy, as listed below:

\* \* \* \* \* \* \*

As 100% of the stock was represented, the meeting was thereupon declared open for business.

The Secretary presented the Resolution which had been duly adopted at a meeting of the Board of Directors held on October 11, 1954, which resolution provided that this corporation shall go into liquidation, dispose of its assets, and wind up its affairs and be dissolved, and the charter thereof be surrendered and cancelled.

After full consideration of the foregoing Resolution, and on motion duly made and seconded, the following Resolutions were thereupon unanimously adopted:

RESOLVED, that Virginia Ice and Freezing Corporation a Corporation chartered by the State of Virginia, be completely liquidated at the earliest practicable date, that all debts of the Corporation, so far as can be immediately ascertained, be paid and the remaining cash together with securities owned, or the cash realized from the sale thereof, be distributed pro rata to its stockholders prior to December 10, 1954, and that all other assets of the Corporation be disposed of as soon as practicable and the proceeds therefrom, after payment of any remaining liabilities, be distributed pro rata to the stockholders upon surrender by said stockholders to the Corporation of all the outstanding stock thereof.

\* \* \* \* \* \* \*

RESOLVED FURTHER, that the officers of Virginia Ice and Freezing Corporation be authorized and directed to take immediate steps to complete the liquidation of said corporation so that its assets or the proceeds therefrom can be distributed to its stockholders prior to October 10, 1955, and that promptly thereafter steps be taken to surrender the charter and franchise of the corporation to the State of Virginia and to dissolve the corporation.

RESOLVED FURTHER, that Virginia Ice and Freezing Corporation cease the transaction of all business as of this date, except such as may be necessary or incidental to the complete liquidation thereof and the winding up of its affairs, including the payment of any obligations of the corporation now outstanding and any expenses incident to the liquidation thereof.

The legal notice referred to in the first paragraph of the above minutes was as follows:

A meeting of the stockholders of Virginia Ice & Freezing Corporation will be held at the principal office of the company, located at the foot of West Southampton Avenue in the city of Norfolk, Virginia, on the 22nd day of October, 1954, at 11 : 00 o'clock A. M. to consider and vote on a resolution heretofore adopted by the Board of Directors of the company on Monday, October 11, 1954, recommending that the said corporation dispose of its assets, be dissolved and its charter surrendered.

> W. C. FRENCH, *Secretary*,
> VIRGINIA ICE & FREEZING
> CORPORATION.

It had been the practice of Beam in meetings of stockholders held prior to the special meeting of October 22, 1954, to vote proxies given by other stockholders of petitioner. At each of its annual meetings of shareholders held on March 18, 1952, March 17, 1953, and March

16, 1954, the only shares represented personally were the 108 shares owned by Beam and the 45 shares owned by French, or a total of 153 shares, and the remaining shares were voted by proxy. The shares voted by proxies at the aforesaid meetings were 640, 749, and 739, respectively.

During the period from November 1, 1954, to the date of dissolution on September 20, 1955, petitioner sold its remaining 6 ice plants and equipment at a net profit of approximately $131,800 and certain automobiles and trucks at a net loss of approximately $2,900.

On its return for the calendar year 1954, the petitioner deducted the amount of $19,200.44 as a net loss from sale or exchange of property. The respondent disallowed the deduction and, in a statement attached to the deficiency notice, explained his disallowance as follows:

(a) It is held that you are not entitled to a deduction in the amount of $19,200.44 claimed as a loss sustained upon the sale of business assets during the year 1954 since such sales were made as a part of a plan of complete liquidation already in effect although not formally adopted by the shareholders until later.

The Ocala and Portsmouth properties were not sold pursuant to any plan of liquidation of petitioner corporation.

## OPINION.

Prior to the adoption of the Internal Revenue Code of 1954, substantial tax differentials existed depending upon whether a sale of property used in the trade or business of the taxpayer corporation was made by the corporation before the adoption of a plan of liquidation or by the shareholders after the adoption of a plan of liquidation. This differential gave rise to disagreement between the Federal taxing authorities and the taxpayer over the issue of when and by whom the sale was made. See *Commissioner* v. *Court Holding Co.*, 324 U. S. 331 (1945), where it was held that the sale was made by the corporation, and *United States* v. *Cumberland Public Service Co.*, 338 U. S. 451 (1950), where on the facts the Supreme Court held that the sale was made by the shareholders. With a view to avoiding these factual uncertainties, Congress enacted section 337 of the Internal Revenue Code of 1954 [1] to provide that if a plan of

---

[1] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

complete liquidation is adopted on or after June 22, 1954, and within 12 months after the date of the adoption of the plan all of the assets of the corporation are distributed in complete liquidation, then no gain or loss is recognized to the corporation from the sale or exchange by it of its property within the 12-month period.

In his brief the respondent states that the sole point of controversy in the present case is whether or not a plan of complete liquidation was already adopted and in effect within the meaning of section 337 on October 1 and 4, 1954, when the sales of the Ocala and Portsmouth properties were effectuated, notwithstanding that according to the corporate records of petitioner the shareholders did not formally adopt the plan of complete liquidation until October 22, 1954. The respondent concedes that if no such plan of complete liquidation had been adopted when the two sales were made, then the losses claimed by petitioner are allowable.

Subsection (b) of section 1.337–2 of Income Tax Regulations under the Internal Revenue Code of 1954 as of May 31, 1956 (Publication No. 329–1), provides in part:

Ordinarily the date of the adoption of a plan of complete liquidation by a corporation is the date of adoption by the shareholders of the resolution authorizing the distribution of all the assets of the corporation * * *. Where the corporation sells substantially all of its property * * * prior to the date of adoption by the shareholders of such resolution, then the date of the adoption of the plan of complete liquidation by such corporation is the date of the adoption by the shareholders of such resolution and gain or loss will be recognized with respect to such sales. Where no substantial part of the property * * * has been sold by the corporation prior to the date of adoption by the shareholders of such resolution, the date of the adoption of the plan of complete liquidation by such corporation is the date of adoption by the shareholders of such resolution * * *. In all other cases the date of the adoption of the plan of liquidation shall be determined from all the facts and circumstances. * * *

The respondent argues that under "all the facts and circumstances" the plan of complete liquidation had informally been adopted and was already in effect as early as October 1, 1954, when the petitioner sold the Ocala property. The respondent bases this argument upon the fact that when petitioner's board of directors met on October 1, 1954, to approve the sale of the Ocala property, they also caused to be entered in petitioner's minute book a notice to themselves that there would be a meeting of the board on October 11, 1954, to act on the matter of the liquidation of the corporation. The respondent further argues that because a large number of stockholders had given Beam proxies to vote their stock at the annual meetings of petitioner held in 1952, 1953, and 1954, it was reasonable for Beam to believe that he would likewise receive a sufficient number of proxies from the stockholders to enable him and French, at a meeting of the stockholders, to adopt a resolution that petitioner be completely liquidated

and dissolved, and that therefore the directors knew on October 1, 1954, that complete liquidation would ultimately be approved by the stockholders and that such special meeting of the stockholders called for October 22, 1954, would be a mere formality.

It is difficult for us to follow respondent's argument. Section 13–61 of the Code of Virginia of 1950 [2] provides that for a corporation to dissolve, notice of the meeting of the board of directors must be given to every director at least 10 days prior to the meeting. Such notice was given on October 1, 1954, after the meeting of the board on that day had adjourned. Such meeting was subsequently held on October 11, 1954, at which meeting the directors decided to recommend liquidation of the business and a meeting of the stockholders was called in accordance with the Virginia statute for October 22, 1954. At that meeting of the stockholders, a plan of complete liquidation was adopted.

It is our opinion that petitioner did not adopt a plan of complete liquidation prior to the meeting of the stockholders [3] on October 22, 1954. Until then there was no assurance that the recommendation of the board of directors passed on October 11, 1954, would be adopted by the stockholders. Even if the date the directors acted, viz, October 11, 1954, is significant, it was at a date subsequent to the dates on which the Ocala and Portsmouth properties were sold.

We hold, therefore, that at the time the Ocala and Portsmouth properties were sold, petitioner had not yet adopted a plan of complete liquidation and that these sales are not controlled by section 337 of

[2] 1950 Code of Virginia:

*Section 13–61.* HOW CORPORATIONS DISSOLVED AFTER PAYMENT OF CAPITAL.— ; Whenever in the judgment of the board of directors it is deemed advisable and for the benefit of any corporation * * * that it be dissolved, a resolution to that effect shall be adopted by a majority of the whole board at a meeting called for that purpose. Notice of the meeting of the board must be given in person or by mail to every director at least ten days prior to the meeting. The directors must, within fifteen days after the adoption of the resolution, cause notice of its adoption and of the date for meeting of stockholders to consider it to be mailed to each stockholder of record, at least ten days before the date designated for the meeting of stockholders. They must, also * * * cause a notice of the meeting of the stockholders to be held at the principal office of the corporation to take action upon the resolution so adopted by the board of directors, to be published in a newspaper * * *. On the day fixed for the meeting, a majority in interest of the stockholders present may adjourn to another day or time ; and if at any such meeting or adjourned meeting, two-thirds in interest of the stockholders consent to the proposed dissolution and signify their consent in writing, given either in person or by proxy, this consent, together with a list of the names and residences of the directors and officers, certified by the president, secretary and treasurer, shall be filed in the office of the clerk of the Commission, and the Commission, upon being satisfied by due proof that the requirements of law have been complied with, shall issue a certificate that such consent has been filed, and thereupon the corporation will stand dissolved, and the board shall proceed. to, settle up and adjust its business and affairs.

[3] In this connection, see sec. 8019, 16 Fletcher, Cyc. Corps. (rev. ed. 1942), which states. in part :

"Independently of statutory provision authorizing the directors or managing officers of a corporation to surrender its charter, it is not within their authority to do so, but the dissolution must be the act of the stockholders. * * *"

the Internal Revenue Code of 1954. The respondent's determination on this point is disapproved. Because of an uncontested adjustment made by respondent in the deficiency notice,

*Decision will be entered under Rule 50.*