KENT MANUFACTURING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73611. Filed February 18, 1960.

*Converse Murdoch, Esq.*, for the petitioner.
*Joseph N. Ingolia, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The respondent has determined deficiencies in the income tax of the petitioner for the fiscal years ended June 30, 1953 and 1954, in the amounts of $11,286.93 and $1,649.36, respectively. The deficiency for the fiscal year ended June 30, 1953, results from the reduction by respondent of a net operating loss of the petitioner for the fiscal year ended June 30, 1955.

The issue for decision is whether under section 392(b) of the Internal Revenue Code of 1954 petitioner's gain upon the involuntary conversion of certain capital assets is nonrecognizable.

All of the facts have been stipulated and we adopt such stipulation, together with the attached exhibits, as our findings of fact.

The petitioner, Kent Manufacturing Corporation, was a corporation duly organized under the laws of the State of Maryland on July 1, 1945. Its principal office and place of business were maintained at Chestertown, Maryland. It was engaged in the business of manufacturing and selling fireworks of various types. It kept its books and records and filed its Federal income tax returns on an accrual method of accounting with its fiscal year ending each June 30. The Federal income tax returns of the petitioner for the fiscal years ended June 30, 1953 and 1954, were filed with the district director of internal revenue at Baltimore, Maryland.

On July 16, 1954, the petitioner's plant and all the equipment therein were destroyed by an explosion. The plant and equipment destroyed were property used by the petitioner solely in its trade or business. Its adjusted basis for the plant and equipment destroyed by the July 16, 1954, explosion was $44,850.59. The plant and equipment destroyed by the explosion were insured against damage from explosion and on or before September 29, 1954, the petitioner realized a net recovery on its insurance of $63,027.40. The proceeds from insurance exceeded the adjusted basis of the plant and equipment by $18,176.81.

On October 9, 1954, petitioner by appropriate corporate action resolved to completely liquidate and to transfer all of its assets, except those necessary to meet necessary claims, to its stockholders.

In filing its income tax return for its fiscal year ended June 30, 1955, petitioner in a separate schedule notified respondent that it had a gain of $31,107.57 on the involuntary conversion of its capital assets and elected that section 392(b) be applicable thereto.

The petitioner's income tax return for the fiscal year ended June 30, 1955, reported a loss of $106,556.80 and on November 21, 1955, the petitioner filed an Application for Tentative Carryback Adjust-

ment, in which it requested refunds of $55,409.54 for the fiscal year ended June 30, 1953, and $9,424.42 for the fiscal year ended June 30, 1954, resulting from the carryback.

The Commissioner by a statutory notice of deficiency which was mailed to the petitioner on March 5, 1958, determined that the gain on the involuntary conversion was not $31,107.57 but was $18,176.81 which should not have been excluded from income under the provisions of section 392(b) of the 1954 Code since the gain did not result from a sale or exchange of property. He held that it reduced the loss for 1955 and the resulting carryback loss to each of the fiscal years ended June 30, 1953 and 1954. As a result the Commissioner determined there was a tax deficiency of $11,286.93 for the fiscal year ended June 30, 1953, and a deficiency of $1,649.36 for the fiscal year ended June 30, 1954.

Before January 1, 1955, the Kent Manufacturing Corporation distributed all of its assets, less assets retained to meet claims, to its shareholders in complete liquidation of the corporation.

Having suffered the complete destruction of operating assets and having received as insurance proceeds an amount in excess of its remaining basis in the destroyed assets "during the calendar year 1954," petitioner seeks to exclude the excess from its gross income by virtue of the provisions for nonrecognition of gain contained in section 392(b) of the 1954 Code.[1] Respondent has added such excess to petitioner's gross income for the fiscal year ended June 30, 1955, in determining the instant deficiencies for various reasons which we think, narrowly stated, are that an involuntary conversion of capital assets to money does not constitute a "sale or exchange" under either section 392(b) or section 337(a) [2] of the 1954 Code. Petitioner, as we understand its position, contends that section 337(a) is not here applicable and concedes that section 392(b), by its literal wording and standing alone, does not provide for nonrecognition of the gain here at issue. However, it urges that resort to the congressional

---

[1] SEC. 392 (b) SPECIAL RULE FOR CERTAIN SALES DURING 1954.—
    (1) NONRECOGNITION OF GAIN OR LOSS.—If—
        (A) all of the assets of a corporation (less assets retained to meet claims) are distributed before January 1, 1955, in complete liquidation of such corporation; and
        (B) the corporation elects (at such time and in such manner as the Secretary or his delegate may by regulations prescribe) to have this subsection apply,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property during the calendar year 1954.

[2] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
    (a) GENERAL RULE.—If—
        (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
        (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

history relating to section 117(j) of the 1939 Code, which is the forerunner of section 1231 of the 1954 Code, discloses a congressional intent that "sale or exchange" as used in section 392(b) includes involuntary conversions. It is true that under either section 392(b) or section 337(a) nonrecognition of gain or loss depends upon whether the transaction giving rise to gain or loss is encompassed within the phrase "sale or exchange." Section 1231(a) contains a provision that—

If * * * recognized gains on sales or exchanges of [such property as is here involved] * * * plus the recognized gains from [involuntary conversion of capital assets] * * * and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

We do not agree that this provision has the effect claimed by petitioner nor is it necessary to refer to congressional history in construing section 1231(a) in the light of the issue before us. It is unambiguous at least sufficiently to determine that it does not have the claimed effect upon sections 337(a) and 392(b). See *Estate of Harrison P. Shedd*, 23 T.C. 41, affd. 237 F. 2d 345; *Estate of Robert J. Cuddihy*, 32 T.C. 1171.

Sections 337(a) and 392(b) have to do with gains and losses from certain sales or exchanges of property in the complete liquidation of corporations. Their only function is to characterize such gains and losses as nonrecognized. Only after there remains no further controversy with respect to these sections does section 1231(a) [3] come into effect for that section deals only with *recognized* gains and losses. Its only function is to provide special treatment of the recognized gains and losses of a taxpayer from sales or exchanges of property,

---

[3] SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection—

(1) in determining under this subsection whether gains exceed losses, the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the extent taken into account in computing taxable income, except that section 1211 shall not apply; and

(2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

plus gains or losses from involuntary conversions where the total of all such gains either exceed or are less than the total of all such losses. The fact that Congress has in this section alone plainly intended to differentiate between sales and exchanges and involuntary conversions militates against petitioner's position. It is clear to us that Congress has here provided that the two sources of gains and losses be treated as "sales or exchanges of capital assets held for more than 6 months" solely for the purposes of section 1231(a) and did not intend thereby to modify or amend sections 337(a) and 392(b) to that effect. Unless the gains and losses referred to in section 1231(a) are unaffected by sections 337(a) and 392(b) and are otherwise recognized, that section has no application to either of them. To state the matter in the converse, if the earlier sections have applied to gains or losses rendering them *nonrecognized*, the later section, dealing only with *recognized* gains and losses, has no bearing upon them. The phrase "sale or exchange," there being no statutory definition thereof, is to be given its ordinary, commonly accepted meaning. *Helvering* v. *Flaccus Leather Co.*, 313 U.S. 247. This is true unless Congress has provided an express exception. None is pointed to by petitioner and we are unable to find such an exception.

Assuming *arguendo* that "sales or exchanges" include involuntary conversions, under the facts before us section 337(a) would not bring about the nonrecognition of the gain here involved because the conversion (explosion) took place on July 16, 1954, prior to petitioner's adoption of its plan of liquidation, which occurred October 9, 1954, bringing such a transaction outside the scope of the section as being a "sale or exchange" which occurred prior to the 12-month period after the adoption of the plan of liquidation. *Virginia Ice & Freezing Corporation*, 30 T.C. 1251.

Section 392 has the effect of applying the provisions of section 337, with some modification with respect to the period of distribution in liquidation and the fact that sales or exchanges need not be necessarily connected with corporate liquidations, to the period of change from the 1939 to the 1954 Code. Nowhere in the legislative history of either is there expressed an intent that "sales or exchanges" include involuntary conversions. Section 337 was enacted merely "to provide a definite rule which will eliminate any uncertainty" with respect to whether the onus of the tax in corporate liquidations is to be borne by the corporation or its stockholders. *Virginia Ice & Freezing Corporation, supra;* H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), p. A106; S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 48. Because the involuntary conversion (the explosion), coupled with the receipt of insurance proceeds, definitely predated any decision or plan to liquidate the corporation and distribute its assets to its stock-

holders, there can be no such uncertainty here as to whether the corporation or its stockholders effectuated the transaction which gave rise to the gain involved. Cf. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331; *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451.

We have considered *Towanda Textiles, Inc.* v. *United States*, 180 F. Supp. 373 (Ct. Cl), relied on by petitioner, and to the extent it is inconsistent with our holdings herein we respectfully disagree with it.

*Decision will be entered for the respondent.*