## B. A. GRIFFIN COMPANY, INC. v. NORTHWESTERN FISH & SEAFOOD COMPANY, INC.[1]

July 9, 1948.

No. 34,504.

[1]Reported in 33 N. W. (2d) 838.

498

*Donald O. Wright,* for appellant.
*Jenswold, Butchart & Dahle,* for respondent.

MAGNEY, JUSTICE.

Defendant appeals from a judgment entered upon findings in plaintiff's favor.

Plaintiff is a wholesaler of fish, with offices in Milwaukee. Defendant is also a wholesale dealer in fish, with its place of business in Minneapolis. During the season of 1943-1944, defendant purchased about 300,000 pounds of frozen herring. On and prior to December 12, 1943, plaintiff was the owner of 2,060 ten-pound boxes of frozen so-called Lake Superior herring, which fish was in the cold storage warehouse of the Dormer Company at Menominee, Michigan. On or about said date, defendant orally agreed to purchase from plaintiff this lot of fish at 12¼ cents per pound. Samples which were furnished by plaintiff to defendant were found to be satisfactory.

As defendant was short of storage space, it did not want the fish shipped to it, but desired to have it remain in the warehouse at Menominee. Plaintiff made arrangements with the Dormer Company for the continued storage of the fish. Under date of December 31, 1943, an invoice was mailed to defendant. It stated net cash seven days. That defendant received this invoice is indicated by a letter defendant's attorney wrote to plaintiff's attorney on March 6, 1944, reading as follows:

"* * * On December 31, 1943 Griffen Company forwarded an invoice to Northwestern Fish & Seafood Company, * * *. The invoice indicates that the merchandise was in storage at the Dormer Company, Menominee, Michigan * * *."

Plaintiff at that time wrote the Dormer Company requesting that the fish be placed in the name of defendant and that a warehouse receipt be made out to defendant and mailed to it. Plaintiff stated: "They want to be put into their name as of the last expiration date * * *."

On January 4, 1944, in response to plaintiff's letter, the Dormer Company opened up a ledger account in the name of defendant, transferring the account from plaintiff to defendant. A letter from the Dormer Company to plaintiff of that date reads in part:

"* * * we have today transferred to the account of * * * Northwestern Fisheries Minneapolis, Minn. 2060 10# boxes herring.

* * * * *

"You will find enclosed warehouse receipts and also invoice for storage charges which you can kindly forward to the respective parties."

The Dormer Company made out an invoice to defendant for storage charges from December 23, 1943, to January 23, 1944, and also made out what its manager in a letter of transmittal called a warehouse receipt, but which in fact was merely a transfer or delivery slip and was so designated. These were mailed, not to defendant, but to plaintiff. Storage dated back to December 23, according to the usage in the business. Storage had been paid up to December 23. The Dormer Company had received storage for fish only since October 1943, and did not at that time issue warehouse receipts in the usual form. It was not a bonded public warehouse, but a storage company which only processed and stored fresh fish. On January 18, 1944, the invoice for the storage charges made out in defendant's name was forwarded by plaintiff to defendant, with a letter which informed defendant that the fish was in defendant's name at the Dormer Company at Menominee. The letter reads:

"Confirming phone conversation of today, I am herewith enclosing transfer number 33948 covering the 2060-10 lb. boxes of Lake Superior Herring which are in your name at the Dormer Co. Menominee, Mich."

Defendant admits receiving this letter on January 19, 1944, together with the invoice mailed by the Dormer Company to plaintiff, which described the fish involved in the transaction. The Dormer Company on January 31, 1944, mailed direct to defendant another bill for storage from January 23 to February 23, 1944, covering the same fish. On or about February 2, 1944, plaintiff demanded payment for the fish. On or about the same day, defendant returned the invoice of December 31, 1943, and informed plaintiff that its order was cancelled because it had never received a warehouse receipt for the fish and did not have title to the merchandise. The letter reads as follows:

"We are herewith returning your invoice of Dec. 31st. in the amount of $2527.18. We are cancelling out on this herring as we have never received a cold storage warehouse receipt and it is now getting too late in the season for frozen herring.

"We requested your office some time ago when talking on the phone to draw a draft on us and attach the warehouse receipt, but this has never been done and it is too late in the season for us to take delivery of this herring now."

The price on frozen herring started to slip the middle of January. It was a falling market. The fish was held in storage for some time and processed to prevent spoilage. It was finally sold for animal food at a very low price. We have taken plaintiff's version of the disputed facts, as we must. This action was brought to recover the difference between the invoice value and the sum finally received as salvage, plus storage and processing charges. It was tried before the court without a jury, and the findings favored plaintiff.

Plaintiff and defendant had done business with each other for 15 to 18 years. The sales in the past had been on open account. The practice had not been for plaintiff to attach a draft and a bill of lading or warehouse receipt. Invoices were paid when merchandise was received.

Plaintiff claims that it delivered the fish to defendant by placing the same in storage with the Dormer Company and that it was accomplished before December 31, 1943. Defendant claims that it

did not receive a warehouse receipt and that therefore title did not pass to it.

Defendant admits that on and prior to December 12, 1943, plaintiff was the owner of the lot of fish in question; that it was in the possession of the Dormer Company; and that the fish was in the name of plaintiff. It admits that it agreed to purchase this specific fish at an agreed price. On or about December 31, 1943, the fish was transferred on the books of the Dormer Company from plaintiff to defendant, and on or about the same date an invoice was mailed by plaintiff to defendant, which it received. Later on, about January 18, 1944, defendant received an invoice from the Dormer Company covering storage of the fish from December 23, 1943, to January 23, 1944, and on or about January 31, 1944, it received another invoice from the Dormer Company for storage from January 23, 1944, to February 23, 1944.

Defendant also claims that title did not pass to it, because it had received no delivery of the fish, since the Dormer Company at no time acknowledged to it that it held the fish on defendant's behalf as required by M. S. A. 512.43(3), a part of the uniform sales act, which reads:

"Where the goods at the time of sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver to the buyer *unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf;* but as against all others than the seller the buyer shall be regarded as having received delivery from the time when such third person first has notice of the sale." (Italics supplied.)

There can be no question that the Dormer Company knew of the transaction between plaintiff and defendant. It had transferred the account from plaintiff to defendant. It had caused to be sent, or sent, two invoices for storage to defendant. The first one it received about January 19, 1944. It seems to us under the facts here that the statute has been complied with. In Cundill v. Lewis, 245 N. Y. 383, 157 N. E. 502, relied upon by defendant, we have the same

statute but a different set of facts. In that case, the buyer knew that the goods were in the warehouse, ascertained the storage charges, and paid them. The court held that there had been no acknowledgment on the part of the warehouse that it held the goods for the buyer's account. However, in that case, the warehouse company had not been informed that the buyer had purchased the goods, that he was the owner thereof, or that he had an order for delivery. The warehouse company could not acknowledge that it held the goods for buyer's account, since it knew nothing of the transaction. The court there said (245 N. Y. 387, 157 N. E. 503):

"* * * Under the circumstances, such an inference could not properly be drawn from the mere fact that the warehouse company accepted a check from the plaintiff for a month's storage of the camphor. It may have thought that he was paying the debt of the defendant for storage."

Here, the Dormer Company knew that plaintiff was the owner of the fish in storage at its plant; that on December 31, 1943, plaintiff asked it to put this fish in the name of defendant; and that it did put the fish in the name of defendant on or before January 4, 1944. Two invoices for storage of this fish had been made out to defendant by the Dormer Company, both of which it received. In our opinion, the Dormer Company thus acknowledged to defendant, the buyer, that it held the goods on the buyer's behalf, and that as a result plaintiff had fulfilled its obligation to deliver the fish. Delivery to defendant was complete according to testimony in behalf of plaintiff. There was nothing more to be done. Title had passed to defendant, and when it attempted to cancel its purchase on February 21, 1944, it was a completed transaction, and the seller entitled to its purchase price.

M. S. A. 512.18 provides:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 512.19 provides rules for ascertaining intention, rule 1 of which reads:

"Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

The goods in the instant case were specific goods. They were in a deliverable state. Plaintiff was the owner of the goods, which were in storage at the Dormer Company. Defendant wanted the goods to remain in storage with the Dormer Company, as it was short of storage space. Plaintiff made the necessary arrangements with the Dormer Company to keep the goods in storage for defendant and had the account transferred on the books from plaintiff to defendant. The sale was completed. The Dormer Company issued invoices for storage to defendant, which it received.

In E. L. Welch Co. v. Lahart Elev. Co. 122 Minn. 432, 436, 142 N. W. 828, 830, the court stated the rule:

"* * * In case of sale of specific goods, that is, goods that are specified at the time the contract is made, the title passes at the time the parties intend that it shall pass. The presumption is that it passes at the time the contract is made, and it will pass at that time, unless some facts are shown that indicate a contrary intention. This is true although neither payment nor delivery are then made. Fishback v. G. W. Van Dusen & Co. 33 Minn. 111, 22 N. W. 244; Rail v. Little Falls Lumber Co. 47 Minn. 422, 50 N. W. 471; Day v. Gravel, 72 Minn. 159, 75 N. W. 1."

In Sargent v. Bryan, 160 Minn. 200, 203, 199 N. W. 737, the rule is again stated:

"Section 19, Uniform Sales Act, provides that unless a different intention appears, the property in the goods passes to the buyer

when an unconditional contract is made for the sale of specific goods in a deliverable state. This was the rule at common law and prevailed in this state prior to the adoption of the Uniform Sales Act. Rail v. Little Falls Lbr. Co. 47 Minn. 422, 50 N. W. 471."

In that case the court quoted Williston, Sales (2 ed.) § 448, which reads:

"* * * where all the terms of the bargain are agreed upon, the property presumably passes at once, irrespective of delivery or payment; and in such cases and others where, by the proper construction of the bargain, the property passes before delivery the mutual dependency is merely between delivery and payment."

Schnirring v. Stubbe, 177 Minn. 441, 225 N. W. 389; Louis F. Dow Co. v. Bittner, 187 Minn. 143, 244 N. W. 556.

There are no facts in this case indicating an intention that title should not pass at the time the contract was made for this specific merchandise.

In our view of the case, the question raised by defendant as to the admissibility of certain exhibits is immaterial. So, also, the question of the failure of the Dormer Company to issue and of plaintiff to furnish to defendant a warehouse receipt becomes immaterial. In our opinion, the trial court correctly disposed of the case.

Judgment affirmed.