**Warren W. WHITSON et al., Plaintiffs,**

v.

**B. J. ROCKWOOD, District Director of Internal Revenue, Defendant.**
Civ. No. 223.

United States District Court
D. North Dakota,
Southwestern Division.
Dec. 14, 1960.

**REGISTER, Chief Judge.**

This action by plaintiffs is for the refund of income taxes allegedly overpaid for the year 1956.

The Court does not consider it necessary to state in detail the facts herein; a concise statement thereof is contained in the briefs submitted by respective counsel.

Section 337(a) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 337(a), provides that if a corporation "adopts a plan of complete liquidation" on or after June 22, 1954, and within the 12 month period beginning on the date of the adoption of such plan all of the assets of the corporation (less assets retained to meet claims) are distributed in complete liquidation, then no gain or loss from the sale or exchange of property shall be recognized by such corporation.

The corporate property here involved was sold on February 14, 1956; such real estate was substantially all of the corporation's assets within the requirements of Section 337(b) of the 1954 I. R.C. A formal resolution, adopting a plan of complete liquidation, was passed by the shareholders on November 23, 1956. All corporate assets were sold prior to, and the final liquidating dividend was paid on January 2, 1957.

The sole question to be decided here is whether the corporation had adopted "a plan of complete liquidation" prior to the sale of the Fargo property. If it had, plaintiffs are entitled to recover; if it had not, judgment must be for the defendant. In this regard, the burden of proof is upon plaintiffs to show that the United States has money which belongs to said plaintiffs. United States v. Pfister, 8 Cir., 205 F.2d 538.

Plaintiffs assert that a "plan" as referred to in the statute need not necessarily be in writing, or a result of formal action on the part of the stockholders, or complete to the most minute detail. With this proposition the Court agrees. Plaintiffs contend that such a "plan" was adopted by the corporation by virtue of the oral and telephonic conversations

John A. Zuger and Leonard H. Bucklin, of Zuger, Zuger & Bucklin, Bismarck, N. D., for plaintiffs.

Bruno Lederer, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

which took place between certain officers, stockholders and directors of the corporation subsequent to the receipt of the offer from the prospective purchaser but prior to the date of sale.

A "plan" is a method of putting into effect an intention or proposal. Burnside Veneer Co. v. Commissioner of Internal Revenue, 6 Cir., 167 F.2d 214.

■ Did a "plan" of complete liquidation exist, and, if so, was it adopted by the corporation prior to the sale of the property involved? A brief reference to parts of the transcript of testimony is necessary to a comprehensive discussion of this matter.

The testimony of Mr. Whitson, who was, at the times here involved, a director, the president and general manager of the corporation, is especially important. On direct examination, after referring to the telephone call from Mr. Tellinghusen about the offer, Mr. Whitson stated (Tr. 20): "He asked my opinion. I told him that I felt if we should close the deal at $25,000.00, we had no further reason for being in Fargo and that we should sell and liquidate the corporation, and that if the balance of the stockholders agreed, we should proceed to sell and liquidate." On cross-examination and during inquiry concerning a discussion (relative to the sale of the Fargo property) with any of the stockholders, directors or officers of the company, Mr. Whitson stated: "The only discussion had was with Mr. McDonnell on February 12th." He further testified, concerning the telephone conversation with Mr. McDonnell, as follows (Tr. 36): "We discussed the matter and agreed between ourselves that, insofar as he and I were concerned, we should liquidate, *if the sale was made.* He then— I then advised him to contact Mr. Tellinghusen, who was taking care of the sale, to call the balance of the stockholders representing a majority to see if they agreed to the sale *and then to the liquidation.*" (Emphasis added.) Further, in response to the question "When was the first time that liquidation was ever mentioned or ever discussed by anyone in the

Sweetheart Bakery Company?", Mr. Whitson testified (Tr. 62) as follows: "To my knowledge, on February 12th, to Mr. McDonnell."

From the foregoing it is established that Mr. Whitson, when called about the offer, was in favor of accepting it, and that it was then his intention and judgment that if the other stockholders agreed to the sale, *and the sale were made,* the corporation should be liquidated.

The pertinent testimony (as to this matter) of Mr. Herrick is as follows: Concerning the discussion he had with Mr. Tellinghusen, after receipt of the offer by the latter, Mr. Herrick testified (Tr. 75) that: "When he told me of the offer, we discussed it from two angles; one was that we thought it was a good offer. The other that was if we were to sell the land that we might just as well forget about any thought of going back in the bakery business in Fargo and that it wasn't a decision of just selling the land, but it would also have to be a decision that we would have to forget any thought of going into the Fargo market with a bakery *again,* * * *". He further testified (Tr. 79) that he did not discuss the matter of dissolution with any other directors or shareholders. Bearing in mind the evidence that, at the time of the offer and for some years prior thereto, there was no such bakery business in Fargo, but that the corporation was doing a candy business in Minot and Bismarck, it is obvious that a discussion to the effect that if the land were sold "we might just as well forget about any thought of going back in the bakery business in Fargo" falls far short of the adoption by the corporation of a plan of complete liquidation.

Mr. Arthur Miller's testimony as to this matter is indefinite. He testified (Tr. 83), concerning the telephone call from Mr. Tellinghusen, that he informed Mr. Tellinghusen he was in favor of accepting the offer, and believed Mr. Verduin felt the same way. He stated he did not recall whether or not there was any discussion concerning the dissolution

of the corporation, if all stockholders agreed, but did testify that, after such telephone conversation, he and Mr. Verduin discussed it and "we felt there probably would be a dissolution of the company and that would be it". (Tr. 83) Later, on cross-examination (Tr. 87) he testified (concerning a discussion between himself and Mr. Verduin following the telephone call) as follows: " * * * I don't recall exactly what the conversation was, whether we at that time were saying we were going to dissolve or what the topic at that time was. *Mainly, we thought it was a good offer and we should take it."* (Emphasis added.) He testified he did not talk with any of the other directors or shareholders at that time.

While some of the other testimony may be more definite and specific on the issue, the Court is satisfied that the plaintiffs have failed to sustain their burden of proof herein. It would seem that the most the evidence establishes is that some of the individual officers, directors and stockholders of the corporation, when contacted about the offer to buy the Fargo realty, expressed an intent that, if such sale were made, the corporation should liquidate. Such proposed procedure *to* liquidate was clearly conditional upon the consummation of the proposed sale. The "plan" or "method of putting into effect" such intention or proposal was clearly formulated and adopted subsequent to the sale, and, as is revealed by the evidence, following the return of Mr. Whitson from California.

There is some evidence which indicates that a plan of liquidation was formulated and adopted in advance of the date of the formal resolution of November 23, 1956. However, it is the Court's opinion that the evidence fails to establish that a "plan of complete liquidation" had been formulated or adopted *by the corporation* prior to the date of the sale. Notwithstanding the expressed intentions of some of the witnesses who participated in the conversations, it is apparent that, had the proposed sale not been consummated, or had the offer been withdrawn prior to acceptance thereof, no liquidation would have been contemplated. The execution of the intention *to liquidate* (which existed, apparently, in the minds of some of the individuals involved) was wholly dependent and conditioned upon the consummation of the proposed sale. The actual sale was not an integral part of a then existing plan of complete liquidation which had been previously adopted by the corporation; rather, the execution of the intention of the individuals to liquidate the corporation was conditioned and contingent upon the consummation of a sale which was then anticipated would result from the submitted offer.

█ This case has given the Court much concern. The men involved are honorable men, and the Court was impressed by their apparent frankness and candor. The statute involved in effect provides for an exception under certain circumstances which, as argued by plaintiffs' counsel, eliminates what would otherwise appear to constitute double taxation. However, the statute is specific and must be strictly construed. Plaintiffs have the burden of proving themselves within the exception; this they have failed to do.

Now therefore, it is hereby

Ordered that plaintiffs' complaint and cause of action be, and the same hereby are, in all things, *dismissed.* Counsel for defendant will prepare, serve and submit appropriate findings, conclusions, order for judgment and judgment in conformity herewith.