HENRY H. ADAMS, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84351. Filed August 2, 1962.

*Donald W. Geerhart, Esq.,* for the respondent.

OPINION.

SCOTT, *Judge:* Respondent determined that petitioner was liable as transferee of Chippewa Springs Corporation for a deficiency in the income tax of that corporation for the taxable year January 1 to October 21, 1957, in the amount of $6,642.28, plus interest, as provided by law. Petitioner admits liability as transferee for Chippewa Springs Corporation leaving for decision the issue whether a loss of $21,716.34 sustained by that corporation on the sale of property should be recognized under the provisions of section 337(a) of the Internal Revenue Code of 1954.

All of the facts have been stipulated and are found accordingly.

The Chippewa Springs Corporation (hereinafter referred to as the corporation) was incorporated on October 13, 1913, in Minnesota. At all times material hereto it was engaged in the business of bottling and selling spring water. The corporation filed a Federal income tax return for the period January 1, 1957, through October 21, 1957, with the district director of internal revenue, St. Paul, Minnesota.

Prior to the sale of the corporate assets to the petitioner, the capital stock of the corporation was held as follows:

|  | Number of shares |
|---|---|
| Chippewa trust | 740 |
| Petitioner | 40 |
| Relatives of petitioner | 100 |
| Harley E. Hyre | 40 |
| Relatives of Hyre | 60 |
| Total outstanding shares | 980 |

The Chippewa trust had been created under the will of Alfred F. Pillsbury. The beneficiaries of this trust were John P. Snyder, Richard P. Gale, and Philip W. Pillsbury, 50 percent; Harley E.

Hyre, 20 percent; and petitioner, 30 percent. Trustees of the trust were John P. Snyder, Philip W. Pillsbury, and Harley E. Hyre.

Sometime prior to October 10, 1957, petitioner offered to purchase the assets of the Chippewa Springs Corporation for $175,000. These terms were not acceptable to the majority stockholders, who indicated that an offer of $200,000 for all the assets of the corporation would be acceptable.

On October 10, 1957, the stockholders of the corporation held an informal meeting, as a result of which three documents were prepared. A memorandum dated October 10, 1957, entitled a "Plan For Acceptance of Offer of Henry H. Adams and For Liquidation of Chippewa Springs Corporation," states that petitioner has offered $200,000 for all the corporate assets, that the offer is conditional on the termination of the Chippewa trust, that petitioner plans to finance part of the purchase price from his 30-percent distribution from the trust, that petitioner agrees to deposit the $200,000 in a corporate special account, that the corporate officers would then transfer to him by deeds or bills of sale all properties owned by the corporation, and that upon transfer of the corporate properties to petitioner all the corporate stock would be surrendered, each shareholder receiving a liquidating dividend of $200 per share, the $4,000 remaining from the $200,000 to be used to the extent necessary to defray legal expenses in connection with the transfer. The document further states that agreements should be signed by the beneficial owners of the 740 shares held by the Chippewa trust and recorded in the corporate minutes authorizing the corporate officers to deed the corporate assets to petitioner as soon as his part of the plan is met, and by the trustees of the Chippewa trust to terminate the trust according to its terms.

The other documents prepared as a result of this informal stockholders meeting on October 10, 1957, were the two agreements called for by the memorandum. Both of these documents were signed on October 10, 1957. The trustees' agreement to terminate the Chippewa trust provided that the trustees would terminate the trust upon receipt by them of $148,000 representing the proportionate interest of the trust in the corporate liquidation.

The other agreement, signed by all the trust beneficiaries, is entitled, "Agreement To Surrender 740 Shares of the Capital Stock of Chippewa Springs Corporation Owned by the Chippewa Trust For Cancellation and Complete Liquidation of The Corporation." This agreement provided in part as follows:

The undersigned, owners of a beneficial interest in the Alfred F. Pillsbury Trust Estate and in the said Chippewa Trust, have been advised by Mr. Henry H. Adams of his offer to buy all of the assets of the Chippewa Springs Corporation for the sum of $200,000.00, and do hereby agree to accept the said offer.

We, the undersigned, do hereby authorize the corporate officers of the said Chippewa Springs Corporation to execute good and sufficient deeds and bills of

sale of all properties, both real and personal, owned by the said Chippewa Springs Corporation as of the date of this agreement.

We hereby further agree that upon receipt by the Trustees of the Chippewa Trust of the amount of $148,000.00 in complete liquidation of the Chippewa Springs Corporation that the said Trustees shall transfer to the Chippewa Springs Corporation the 740 shares of the capital stock of said Corporation for cancellation and liquidation of the said corporation upon written agreement by the said Henry H. Adams that he assume any and all liabilities or indebtedness of the said Chippewa Springs Corporation now owing or that may arise after the date of this agreement. We also agree to authorize the Trustees of the Chippewa Trust to terminate the said Trust in accordance with its terms as provided for in the Will.

On October 10, 1957, a notice of a forthcoming shareholders meeting to be held on October 21, 1957, was mailed to the shareholders. The notice provided in part as follows:

NOTICE IS HEREBY GIVEN that a special meeting of the shareholders of CHIPPEWA SPRINGS CORPORATION will be held at 601 Pillsbury Building, in the City of Minneapolis, Minnesota, on Monday, October 21, 1957, at eleven o'clock in the forenoon, to vote on the following:

1. An offer by Mr. Henry H. Adams to purchase the assets of the company for the sum of $200,000.00.

2. If said offer is accepted by the shareholders of the Company, to proceed with the liquidation and dissolution of the CHIPPEWA SPRINGS CORPORATION and to effectuate a transfer to Mr. Henry H. Adams by deeds or bills of sale of all properties both real and personal owned by the corporation.

3. For the transaction of any other business that may come before this meeting.

On October 7, 1957, the First National Bank of Minneapolis (hereinafter referred to as the bank) agreed to provide petitioner with a cashier's check in the amount of $200,000.

On October 21, 1957, immediately prior to the opening of the special meeting of the stockholders of the corporation, a cashier's check, dated October 21, 1957, for $200,000 was presented to petitioner by William L. Howard (hereinafter referred to as Howard), assistant cashier of the bank, and was shown to Harley E. Hyre and Philip Pillsbury, trustees of the Chippewa trust. Howard remained and was present throughout the stockholders meeting.

The drawing of the $200,000 cashier's check had been reflected by a debit memorandum charging petitioner's special account at the bank with $200,000. The debit memorandum had been made out by Howard on the morning of October 21, 1957, prior to the stockholders meeting. At that time there were no funds in petitioner's special account so that the account was technically overdrawn by the $200,000 amount.

The minutes of the special meeting of stockholders which ensued are in part as follows:

The following stockholders were present in person:

Harley E. Hyre, representing 40 shares

Henry H. Adams, representing 40 shares

Fiske & Co., nominee of Alfred F. Pillsbury Trust, represented by Harley E. Hyre and Philip W. Pillsbury, Trustees, 740 shares.

\*       \*       \*       \*       \*       \*       \*

The offer of Henry H. Adams to purchase all of the assets of the corporation for the sum of $200,000 was discussed. The agreement evidencing approval of such sale by the beneficiaries of the Alfred F. Pillsbury Trust was read and copy of such agreement was ordered attached to the minutes hereto.

Philip W. Pillsbury moved that the corporation sell all of its assets to Henry H. Adams for the sum of $200,000 and that the president and secretary be authorized to execute a general deed, bill of sale, and assignment in accordance with copy submitted, and ordered attached to the minutes hereto, and to execute all other necessary papers to effect such sale. Seconded by Harley E. Hyre, unanimously approved.

\*       \*       \*       \*       \*       \*       \*

General discussion was had concerning liquidations of the corporation, and it being the unanimous opinion of all present that it was advisable to do so, the following resolution was made by Harley E. Hyre, seconded by Philip W. Pillsbury and unanimously approved:

WHEREAS, the provisions of sections 301.46, 301.47 and 301.48 Minnesota Statutes 1949, provide for the voluntary dissolution of a corporation out of court and the designation of a trustee or trustees to conduct the winding up of the affairs of the corporation, and

WHEREAS, it is deemed advisable that the affairs of this corporation be wound up and a trustee or trustees be designated,

RESOLVED, that this corporation hereby institutes proceedings for its voluntary dissolution and that Harley E. Hyre, whose address is 5909 Chicago Avenue, Minneapolis, Minnesota, be designated trustee—trustees to conduct the winding up of the affairs of this corporation subject to the provisions of Chapter 301 Minnesota Statutes 1949, and that the president and secretary of this corporation be and they are hereby authorized and directed to sign and acknowledge a certificate under the corporate seal of this company embracing this resolution and to cause such certificate to be filed and recorded in the manner required by Sec. 301.47, Subdivision 2, Minnesota Statutes 1949.

A General Deed, Bill of Sale And Assignment executed by the corporate officers and dated October 21, 1957, provided in part as follows:

KNOW ALL MEN BY THESE PRESENTS, That the undersigned, Chippewa Springs Corporation, a Minnesota Corporation, in consideration of the sum of Two Hundred Thousand Dollars ($200,000.00) and other good and valuable considerations to it in hand paid by Henry Horn Adams, presently residing at Wayzata, Hennepin County, Minnesota, does hereby, effective as of _____, on October 21, 1957, grant, bargain, sell, convey, transfer, assign and set over unto said Henry Horn Adams, his heirs, successors and assigns, forever, all of the right, title and interest of the undersigned in and to the following:

There followed a list of all the corporate assets.

After the sale of the assets of the corporation to petitioner, the only asset remaining in the corporation was $200,000 in cash. Of this amount, $4,000 was paid to petitioner to cover expenses of liquidating the corporation. The balance of $196,000 was distributed to the stockholders on October 21, 1957, in complete liquidation of the corporation.

Immediately after the conclusion of the stockholders meeting, Howard, in the same office in which the stockholders meeting was held, filled out two deposit slips in the name of petitioner's special account in the respective amounts of $132,000 and $68,000. At that time petitioner delivered checks to Howard in the amounts listed on the deposit slips. On the same day the checks in the aggregate amount of $200,000 were deposited to petitioner's special account, covering the cashier's check drawn earlier the same day.

The deposit by petitioner in the amount of $68,000 represented a loan from the bank to petitioner.

The sources of petitioner's deposit in the aggregate amount of $132,000 were as follows:

(a) $60,000 from the account of the corporation with the bank, which was part of the assets acquired by petitioner from the corporation.

(b) $43,845 which petitioner received as his share of the corpus of the Chippewa trust upon its termination.

(c) $20,000 which petitioner's wife and children received for their stock in the corporation and loaned to petitioner.

(d) $8,000 which petitioner received for his stock in the corporation.

(e) $155 supplied by petitioner from his personal funds.

The $200,000 cashier's check had been issued by the bank with the understanding that the necessary funds would be derived by petitioner from the sources listed above.

Respondent made the following determination with respect to the income of the corporation which is in issue:

(d) The deduction of $25,716.34 claimed as a "Loss from sale of business" is disallowed to the extent of $21,716.34 because the sale was made within twelve months from the date a plan of liquidation was adopted by Chippewa Springs Corporation and all of the assets were distributed in complete liquidation within such twelve-month period, in accordance with the provisions of section 337 of the 1954 Internal Revenue Code. The balance, $4,000.00, is the amount paid to cover the cost of liquidating, which is allowable as an ordinary and necessary business expense under section 162 of the 1954 Internal Revenue Code. Therefore, taxable income of Chippewa Springs Corporation is increased in the amount of $21,716.34.

Section 337 of the Internal Revenue Code of 1954[1] provides that when a corporation adopts a plan of complete liquidation, and within

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
(a) GENERAL RULE.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

the 12-month period beginning on the date of the adoption of such plan, all the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

In the present case the corporation both adopted a plan of complete liquidation pursuant to section 337 and sold all its assets at a claimed loss of $25,716.34. The issue presented is whether the sale of the assets occurred within a 12-month period beginning on the date of the adoption by the corporation of a plan of complete liquidation, so as to make the ensuing loss nonrecognizable under section 337.

Petitioner contends that the sale occurred on October 10, 1957, when, at an informal shareholders meeting, the general outline of the intended sale was agreed to by holders of 820 of the 980 shares of the corporation, and that the resolutions adopted at the shareholders meeting on October 21, 1957, merely ratified that which already had been effectively accomplished.

Respondent argues that the sale occurred on October 21, 1957, when the shareholders at a meeting called for the specific purpose of voting on petitioner's offer to buy the corporate property, voted to accept such offer. It was also on this date, respondent points out, that petitioner made payment for the property and received a deed of conveyance covering the property. Respondent argues further that as long as the sale occurred on the same day as the adoption of the plan of liquidation, section 337 is applicable irrespective of whether the sale was completed before or after the adoption of the plan of liquidation. In the alternative respondent argues that in any event section 337 would apply to the present sale because the sale and the liquidation of the corporation are so tied together and dependent on one another that even if it were held that the sale occurred before October 21, 1957, the sale nevertheless occurred in connection with the liquidation.

Even if the agreements of October 10, 1957, constituted a contract to sell, such contract would not effect a sale of the corporate assets until such time as the parties to the contract intended that the property be transferred. Minn. Stat. Ann. 512.01 and 512.18. Cf. *Louis F. Dow Co.* v. *Bittner*, 187 Minn. 143, 244 N.W. 556 (1932), and *B. A. Griffin Co.* v. *Northwestern Fish & Seafood Co.*, 226 Minn. 497, 33 N.W. 2d 838 (1948). Assuming, as petitioner contends, that the beneficiaries of the Chippewa trust who owned outright or held the beneficial interest in 820 of the 980 shares of the corporation could make a binding sale of the corporate assets, nevertheless there is every indication that the parties intended no sale until October 21, 1957.

It is clear from the evidence that the sale of the corporate assets, the liquidation of the corporation, and the termination of the Chippewa trust all had to occur at the same time because each was

dependent on the other. The "Plan For Acceptance of Offer of Henry H. Adams and For Liquidation of Chippewa Springs Corporation" states that petitioner's offer to buy the corporate property is conditional on the termination of the Chippewa trust inasmuch as petitioner planned to finance part of the purchase price from the 30-percent distribution he would receive from the trust. The agreement executed by the trustees on October 10, 1957, to terminate the trust is contingent upon the trust's receipt of $148,000 in liquidation of the corporation.

It necessarily follows that the sale occurred on October 21, 1957, for that was the date admittedly when petitioner first delivered a cashier's check for $200,000 to the corporate officers, when the corporation adopted a plan of liquidation and distributed all its assets in cancellation of its stock, and when the trust was terminated and its assets distributed to the beneficiaries, including the 30-percent payment to petitioner which he used in part payment for the corporate assets. It was also on October 21, 1957, that petitioner received a bill of sale covering the corporate assets.

Petitioner argues that the bill of sale and assignment of the corporate properties to him was drawn prior to October 21, 1957, and was intended to be effective as of October 10, 1957. There are no facts in the record to support this contention. The bill of sale is dated October 21, 1957, the space following the words "effective as of" is blank and the words following this blank space are "on October 21, 1957." These are the stipulated facts. There is no evidence to support petitioner's argument that it was intended that the effective date be October 10, 1957. Even though we agree with respondent that the sale of the assets occurred on October 21, 1957, there remains the question whether section 337 is applicable if the sale of the assets on that date preceded the adoption on that date by the corporation of a plan of liquidation and, if so, which event occurred first.

Section 337 covers any sale consummated within the 12-month period beginning on the date of the adoption of the plan of complete liquidation.

Petitioner points out that "the effective date" of insurance policies usually refers to an exact point in time on a particular day. *Michel* v. *Aetna Casualty and Surety Company*, 252 F. 2d 40 (C.A. 10, 1958). In other situations the word "date" refers to the entire calendar day. Cf. *Kleinschmidt* v. *Hoctor*, 361 Mo. 29, 233 S.W. 2d 649 (1950). Section 337 provides that no gain or loss shall be recognized if the sale of assets is made within the 12-month period "beginning on the date" of the adoption of the plan of liquidation. If Congress had intended the word "date" to denote a point in time, it would have more properly written beginning "at the time" or "at the date" rather than "on the date."

Respondent's regulations have interpreted section 337 to cover all sales occurring on the day of the adoption of the plan of liquidation even though the sale occurs before the adoption.[2] These regulations are a reasonable interpretation of the statute. We hold that section 337 is applicable to the sale of the corporate assets to petitioner.

Petitioner in support of his position cites *Virginia Ice & Freezing Corporation*, 30 T.C. 1251 (1958), and *Whitson* v. *Rockwood*, 190 F. Supp. 478 (D. N.D. 1960). Each of these cases is distinguishable on its facts from the instant case. In the *Virginia Ice & Freezing Corporation* case the sale was completed 22 days before the corporation adopted a plan of liquidation. In that case the Commissioner's argument that the directors' anticipation at the time of the sale of the corporate assets that the shareholders would, in the future, adopt a plan of liquidation constituted an informal plan of liquidation, was rejected.

In *Whitson* v. *Rockwood, supra,* the sale occurred 9 months before the formal adoption of a plan of liquidation by the corporation. In that case the court rejected the taxpayer's contention that the corporation had informally adopted a plan of liquidation at the time of sale. The court held, in fact, that on the evidence presented, any liquidation of the corporation was contingent on the prior sale of the assets there involved.

It is unnecessary to discuss respondent's alternative argument that because of the dependency of the sale of the corporate assets on the liquidation of the corporation, the sale would fall under section 337 irrespective of the fact that the sale occurred on a date prior to the adoption of a plan of liquidation.

*Decision will be entered for the respondent.*

---

[2] Sec. 1.337–1, Income Tax Regs.

Except as provided in sections 337(c) and 392(b), if a corporation distributes all of its assets in complete liquidation within 12 months after the adoption of a plan of liquidation, which plan must be adopted on or after June 22, 1954, no gain or loss shall be recognized from the sale of property (as defined in section 337(b)) during such 12-month period. For this purpose such sales may be made before the adoption of the plan of liquidation if made on the same day such plan is adopted. * * *