ATLEE D. SNYDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ATLEE D. SNYDER, Transferee of the Assets of Snyder Enterprises, Inc., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snyder v. Commissioner
Docket Nos. 7616-78, 7617-78.
United States Tax Court
T.C. Memo 1981-216; 1981 Tax Ct. Memo LEXIS 528; 41 T.C.M. (CCH) 1416; T.C.M. (RIA) 81216; April 30, 1981; As Amended May 12, 1981 Harry W. Schmuck, James C. Herndon, and Sam D. Bartlo, for the petitioner. Richard S. Bloom, for the respondent. TANNENWALD
MEMORANDUM *529 FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies of $ 160,650.05 and $ 125,476.11 in petitioner's income taxes for the taxable years ending December 31, 1973 and December 31, 1974. After concessions by petitioner, the issue remaining is whether Snyder Enterprises, Inc. (Snyder, Inc.), completely liquidated within the statutory period prescribed by section 337(a), [1] thereby entitling it to nonrecognition of gain during that same period. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in North Canton, Ohio, when he filed his petitions in these cases. He filed his Federal income tax returns for the years in issue with the Internal Revenue Service Center, Cincinnati, Ohio, using the cash receipts and disbursement method of accounting. Petitioner is the transferee of Snyder, Inc., see section 6901(h), and has accepted liability for any Federal income tax deficiency adjudged against Snyder, Inc., for its taxable year ending December 31, 1973. See section 6901. *530 Snyder, Inc., was an Ohio corporation which owned and operated mobile homes and trailer parks in North Canton, Ohio. Petitioner founded Snyder, Inc., in 1939 and was its sole shareholder, sole director, and president. [2] Snyder, Inc., on December 26, 1972, adopted a resolution directing its complete liquidation, to be completed by December 26, 1973. On December 26, 1973, Snyder, Inc., certificated its dissolution to the State of Ohio. Petitioner was 70 years old in 1972. Because of his advanced age and seriously declining health, petitioner resolved to divest himself of his business holdings. In pursuit of this plan, petitioner caused Snyder, Inc., to sell most of its assets during the period January 16 to November 2, 1973, for cash, which he then placed in various banks and savings institutions either *531 as savings accounts or certificates of deposit. By December of 1973, petitioner had deposited over $ 420,000. The liquidation of Snyder, Inc., proceeded slowly because of petitioner's severe illness. He was unable to leave his house during large portions of 1973 and was dependent upon a long-time employee, Flossie Haskins, for any automobile travel. Ms. Haskins helped petitioner visit several of his savings institutions during 1973, but, because petitioner's health was so poor and Ms. Haskins was forced to undergo three operations during that year, petitioner was unable personally to visit all such institutions and instruct them to transfer the accounts. Accordingly, by December 25, 1973, petitioner had written and mailed transfer instructions to such institutions. [3]
*532 Snyder, Inc., also owned four parcels of real estate located in Ohio. Three of these parcels were conveyed by Snyder, Inc., to petitioner by deed on December 26, 1973. The fourth parcel of Ohio land owned by Snyder, Inc. (the Lake parcel No. 22-00510), was not conveyed to petitioner, on advice of counsel that the cost of transferring title plus the accrued property taxes exceeded the property's value. [4] Based upon this advice of counsel, petitioner developed the intention to abandon Lake parcel No. 22-00510 on or before January 1, 1973. In furtherance of this plan, neither petitioner nor Snyder, Inc., paid any property tax due on this parcel after that date. The State of Ohio certified the property as delinquent on September 8, 1972. [5]
The only other property owned by Snyder, Inc., on December 25, 1973, was a Cadillac Sedan de Ville, model year 1974. *533 All expenses of this automobile were paid by Snyder, Inc., until it dissolved. However, petitioner's personal account was charged for all such expenses incurred after December 1, 1973, thereby shifting the economic burden of the automobile from Snyder, Inc., to petitioner. Petitioner exercised complete control over this automobile, and, to the extent that he was able to drive or Ms. Haskins was available to drive for him, it was used for his transportation needs whether related to the business of Snyder, Inc., or not. Record title to this automobile was changed from Snyder, Inc., to petitioner in March of 1974. OPINION The sole issue presented is whether Snyder, Inc., satisfied the statutory requirements of section 337(a), thereby entitling it to nonrecognition of the gain realized when it converted its business properties to cash preparatory to its complete liquidation. In order to come within the terms of section 337(a), a corporation must: (1) adopt a plan of complete liquidation; and (2) within 12 months thereof, distribute all of its assets, less those retained to meet claims, *534 to its shareholders. The parties have stipulated that Snyder, Inc., adopted a plan of complete liquidation on December 26, 1972, and they have agreed as to the amount retained to meet claims. Accordingly, the only issue remaining is whether Snyder, Inc., distributed all of its remaining assets within the statutory 12-month period. Respondent makes four separate arguments in support of his contention that Snyder, Inc., failed to qualify under section 337(a). Respondent asserts: (1) that the three parcels of real property conveyed to petitioner on December 26, 1973, were distributed one day beyond the statutory period; (2) that the failure of Snyder, Inc., to convey Lake parcel No. 22-00510 defeats its claim to section 337(a) nonrecognition; (3) that the savings accounts and certificates of deposit were not transferred from Snyder, Inc., to petitioner within the prescribed period; (4) that the Cadillac Sedan de Ville was not distributed to petitioner until March 20, 1974. Petitioner adopts a posture contrary to respondent's on each of the four issues. As to the facts necessary to sustain *535 petitioner's positions, the burden of proof is upon him, Rule 142(a), Tax Court Rules of Practice and Procedure.
On each of the four issues, we hold for petitioner. Issue 1
The parties agree that Snyder, Inc., adopted a plan of complete liquidation on December 26, 1972. They further agree that the three parcels of Ohio State real property were distributed by Snyder, Inc., on December 26, 1973. Their sole disagreement concerning the timeliness of these distributions is whether the statutory period of section 337(a) expired at the close of December 25, 1973, and, if so, whether it was extended by section 7503. Respondent maintains that the distributions under discussion were effected one day late; petitioner argues on a variety of grounds that they were completed on the last acceptable day. In order to come within the terms of section 337(a), Synder, Inc., must have completely liquidated within "the 12-month period beginning on the date on which" it adopted its plan of complete liquidation. Respondent argues that December 26, 1972, is within the relevant 12-month period and that December 26, 1973, is without. We need not determine the precise ending date of the section *536 337(a) period, however, because we agree with petitioner that, even if the ending date were December 25, 1973, [6]section 7503 would be applicable to the facts at hand. *537 Section 7503 provides: When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday. For purposes of this section, * * * the term "legal holiday" means a legal holiday in the District of Columbia; * * *. December 25 is a holiday in the District of Columbia, section 301.7503-1(b)(1)(x), Proced. & Admin. Regs., and so petitioner asserts that the deadline for the "act" of corporate liquidation was extended to December 26, 1973. [7]
Respondent relies upon his position taken in Rev. Rul. 72-541, 1972-2 C.B. 645, namely, that an "act" within the meaning of section 7503 should be limited to "procedural steps in connection with the determination, collection, or refund of taxes." In support of this position, the Ruling cites the relevant legislative history and procedural regulations. The fact of *538 the matter is, however, that the legislative history is both sparse and unclear. The main portions of the committee reports speak in terms of an "act * * * to be performed in a district office or elsewhere." (Emphasis added.) See H. Rept. 1337, 83d Cong., 2d Sess. 109 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 149 (1954). The more detailed explanations use the word "required" in lieu of the word "prescribed" used in the statute itself and speak in terms of an "act * * * to be performed at any office of the United States." H. Rept. 1337, supra at A435; S. Rept. 1622, supra at 616. Respondent's regulations pick up the word "required" instead of the word "prescribed," but not the language relating to "any office of the United States," and give, as examples, situations consistent with the rationale of Rev. Rul. 72-541, supra. See also S. Rept. 1622, supra at 616. We think respondent reads the language of section 7503 too narrowly. [8] It may well be that Congress, in enacting section 7503, was thinking primarily of difficulties in filing documents with, or in taking actions vis-a-vis, the Government in tax matters. See General Lead Batteries Co. v. Commissioner, 20 T.C. 685 (1953). *539 But the fact of the matter is that the statute is not so confined, nor are the primary references in the committee reports. Moreover, we think it significant that section 7503 uses the word "prescribed," which has a broad connotation, and we see no reason not to accord it the usual and ordinary meaning. See Malat v. Riddell, 383 U.S. 569, 571 (1966). Finally, we note that there is no indication that section 7503 was intended to be the exclusive vehicle for dealing with the effect of a time period expiring on a legal holiday. In Campbell Chain Co. v. Commissioner, 16 T.C. 1402 (1951) (Court-reviewed opinion), a taxable year was involved when no statute comparable to section 7503 was in effect. The taxpayer was required to make a contribution to a profit-sharing trust within 60 days after the close of its taxable year in order for it to be deductible in that year. The 60th day was a legal holiday, the contribution was made on the 61st day, and a deduction was claimed for the previous taxable year. We held that the contribution was timely and that the deduction was allowable for the taxable year as claimed by petitioner. We think that Campbell *540 Chain clearly supports petitioner's position herein and that consequently the three parcels of Ohio State real property were distributed within the time limitation of section 337(a). Issue 2
The parties agree that Snyder, Inc., was the titleholder of record of Lake parcel No. 22-00510 on and after December 26, 1973. We have found as a fact that Snyder, Inc. (through its president, sole shareholder, and director, the petitioner herein), formed the intent to abandon this parcel on or before January 1, 1973. This intent does not alone constitute an abandonment of the property, however. Our prior cases, as well as those of Ohio, agree that an abandonment requires "an intention on the part of the owner to abandon the *541 property coupled with an act of abandonment, both to be ascertained from all facts and surrounding circumstances." United California Bank v. Commissioner, 41 T.C. 437, 451 (1964), affd. per curiam 340 F.2d 320 (9th Cir. 1965); West Park Shopping Center, Inc. v. Masheter, 6 Ohio St. 2d 142, 144, 216 N.E. 2d 761, 762-763 (1966). The manifestation by Snyder, Inc., of its intent to abandon was the nonpayment of property taxes due on Lake parcel No. 20-00510. This deliberate nonaction would be a slender reed indeed upon which to peg a finding that Snyder, Inc., had the intent to abandon that property; we hasten to add, however, that we use the fact of nonpayment of accrued property taxes not to establish the necessary intent (such intent having been established by direct testimony), butonly as satisfying the act requirement of an abandonment after taking into account the additional costs which would be involved in transferring formal title and the relationship of the aggregate of the taxes and such costs to the apparently small value of the land. See footnote 4, supra. Cf. Hopkins v. Commissioner, 15 T.C. 160, 173-174 (1950). *542 Moreover, given that small value, even if we were to conclude that an abandonment had not occurred, we would incline to the view that the failure to make an actual distribution fell within the de minimis rule utilized in connection with section 337 liquidations. Mountain Water Co. of La Crescenta v. Commissioner, 35 T.C. 418, 429 (1960). See also p. 17, infra. Respondent observes that, because Ohio had not yet instituted foreclosure proceedings, legal title to Lake parcel No. 20-11510 remained in Snyder, Inc. That is true, but it does not necessarily deny petitioner the benefits of section 337(a). Snyder, Inc., had no more than bare legal title to the property. See Ohio Rev. Code Ann. secs. 5721.10-.18 (Page 1980). To hold that Snyder, Inc., should have conveyed this minimal interest would be to exalt sterile formality over substance; we think that the tax laws need not be so shortsighted. In addition, any attempted conveyance by Snyder, Inc., of an interest in Lake parcel No. 20-00510 might have undermined the abandonment. Arguably, conveyance of an interest in property constitutes an admission that there exists an interest to be conveyed; at a minimum, *543 the deliberate nonconveyance by Snyder, Inc., is the course of action most consistent with the decision of Snyder, Inc., to abandon. We therefore hold that, because Snyder, Inc., did all that it could do to abandon Lake parcel No. 20-00510 and forfeit it to the state, its retention of bare legal title to that property does not impede the application of section 337(a) to its complete liquidation. [9] We conclude that Snyder, Inc., had abandoned Lake parcel No. 20-00510 during and prior to the end of the 12-month period and that, accordingly, in respect of that property, the conditions of section 337 were satisfied. Issue 3
The parties disagree as to whether the savings accounts and certificates of deposit were distributed by Snyder, Inc., within the applicable 12-month period. They agree that petitioner, between December 20, 1973, and December 25, 1973, wrote a series of letters to his banking institutions in an attempt to transfer the accounts from Snyder, Inc., to himself, but respondent contends that petitioner failed to comply *544 with the requirements of section 337(a) in two respects: (1) because petitioner did not provide correspondence concerning three of the accounts, respondent requests us to conclude that petitioner failed to transfer the ownership of those accounts; (2) because petitioner's initial letters to the various banking institutions requested only that future interest payments be made to petitioner in his individual capacity rather than to Snyder, Inc., respondent argues that ownership of the underlying accounts remained in Snyder, Inc. Although the bulk of the correspondence between petitioner and his banking institutions was generated more than six years before trial of this case, petitioner introduced into evidence over 100 letters documenting his attempt to transfer ownership of the various accounts. Those letters demonstrate petitioner's deliberate and methodical attempt to transfer ownership of the disputed accounts to himself in his individual capacity. Although the question is not free from doubt, we have concluded that it is more likely than not that petitioner corresponded with each of his banking institutions concerning all of his accounts. We are also able to conclude that *545 petitioner intended by those letters to transfer all ownership in the accounts from Snyder, Inc., to himself and that, in fact, several of the banking institutions so interpreted his communications. However, section 337(a) requires more than an intent to liquidate, [10] and respondent argues that, despite petitioner's intent to comply with the terms of section 337(a), his letters did not cause a "distribut[ion]" within the meaning of that section. To be sure, petitioner's letters to the banking institutions were not as explicit as they could have been. Several of them did contain, however, a notation that Snyder, Inc., had gone or shortly would go out of business, and petitioner on occasion obliterated the address of Snyder, Inc., and substituted his home address. Petitioner was not learned in the law, and he did as much as he was able and as much as he thought necessary to effectuate the distributions. These are elements which should be viewed with some flexibility in the context of section 337, where (as is the case herein) the petitioner was the sole shareholder. See Pastene v. Commissioner, 52 T.C. 647 (1969); *546 Bird Management, Inc. v. Commissioner, 48 T.C. 586, 591-593 (1967). See and compare Gensinger v. Commissioner, 208 F.2d 576 (9th Cir. 1952), revg. on this issue 18 T.C. 122 (1953). Surely, more precise instructions (presumably based on better tax advice) would have avoided these difficulties. Nonetheless, section 337 was enacted as a relief provision for taxpayers such as the petitioner herein, and "we should be slow to give a reading to the sectional that would defeat the purpose of the statute." Bird Management, Inc. v. Commissioner, supra at 593. We think that, under the peculiar facts of this case, petitioner has met his burden of proof. Cf. Pastene v. Commissioner, supra.[11]
Accordingly, we hold that the instructions to the banking institutions operated to transfer the savings accounts and certificates of deposit from Snyder, Inc., to petitioner (see footnote 3 supra) and that consequently they were distributed *547 by Snyder, Inc., in accordance with the requirements of section 337(a). Issue 4
The parties agree that Snyder, Inc., owned a 1974 Cadillac Sedan de Ville and that the original certificate of title was issued in the corporation's name. They further agree that a certificate of title was first issued in petitioner's name on March 20, 1974. Respondent concludes therefrom that Snyder, Inc., failed to distribute the Cadillac within the 12-month period of section 337(a). We disagree. Respondent interprets Ohio law as providing that a certificate of title is conclusive proof of title, and there is support for that reading. See Ohio Rev. Code Ann. sec. 4505.04 (Page 1973); Switzer v. Carroll, 358 F.2d 424 (6th Cir. 1966) (by implication). On the other hand, it has been recognized that Ohio seeks only to prevent thefts and frauds, United States v. Birns, 395 F.2d 943, 947 (6th Cir. 1968), and Ohio by statute provides that an interest in a motor vehicle may be evidenced by "admission in the pleadings or stipulation of the parties." Ohio Rev. Code Ann. sec. 4505.04(B) (Page 1980). Thus, we think that, under Ohio law, a formal transfer of title *548 is not necessary to make a transfer of the property effective as between the transferor and transferee. See Bird Management, Inc. v. Commissioner, supra at 593. Here, Snyder, Inc., intended to effectuate a timely distribution, petitioner enjoyed the Cadillac as if it were his own, and the burden of maintenance was shifted from the corporation well within the statutory period of section 337. We think enough was done to satisfy the requirements of that section. See Bird Management, Inc. v. Commissioner, supra at 593. Even if we were to consider the transfer of legal title significant, we would be inclined to apply the de minimis rule, recognizing, of course, that, in applying that rule in this case, we would also have to take into account the abandoned parcel of land. See p. 12, supra. We note that the combined likely value of the Cadillac and the abandoned parcel could not have constituted more than 2 percent of the total value of the assets involved herein. In holding that petitioner has satisfied the requirements of section 337, we again emphasize that the circumstances of the instant case are extremely unusual and that our *549 findings and conclusions relating to the issues of what constitutes a distribution are limited to our analysis of the particular and peculiar facts revealed by the entire record herein. Decisions will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Some documents admitted into evidence indicate that an attorney, Robert Marks, was a director of Snyder, Inc., and that Flossie Haskins was the secretary and vice-president as well as a director of Snyder, Inc. We need not resolve these inconsistencies because the parties agree that petitioner at all times exercised unfettered control over all aspects of Snyder, Inc.↩
3. In several instances, some instructions were dated after December 26, 1973, but there are references in them to earlier written instructions. Additionally, some instructions only requested that future interest checks be sent to petitioner. However, based on the record as a whole, we have concluded that all necessary transfer instructions were sent within the requisite one-year period prescribed by section 337. See pp. 13-16, infra↩.
4. The assessed value of the land was $ 170; by 1978, it had been increased to $ 250. Admittedly, assessed value does not necessarily measure fair market value, but we are satisfied that the latter value of the parcel would not be significantly larger. ↩
5. See Ohio Rev. Code Ann. sec. 5721.01, et seq.↩ (Page 1980).
6. There is language in several cases implying that the date of adoption of the plan of liquidation should not be counted. O.B.M., Inc. v. Commissioner, 427 F.2d 661, 663, 665 (2d Cir. 1970), revg. 52 T.C. 619 (1969); Vern Realty, Inc. v. Commissioner, 58 T.C. 1005, 1007 (1972), affd. (1st Cir. Apr. 26, 1973); Stevenson v. Commissioner, T.C. Memo. 1975-257; Best Realty Co. v. United States, an unreported case ( N.D. Tex. 1962, 10 AFTR 2d 5222, 5225, 62-2 USTC par. 9588); Casa Loma, Inc. v. Commissioner, T.C. Memo. 1980-78. We note, however, that in none of these cases was a close reading of section 337(a) necessary for purposes of computing the 12-month period, since, in each of the cases, acts well beyond the 12-month period, however, computed, were involved. Compare Adams v. Commissioner, 38 T.C. 549 (1962). See sec. 1.337-1, Income Tax Regs.; Rev. Rul. 79-3, 1979-1 C.B. 143↩.
7. December 26, 1973, was a Wednesday.↩
8. We are not bound by positions taken by the Commissioner in Revenue Rulings, Theo. H. Davies & Co. v. Commissioner, 75 T.C. 443, 449-450 (1980); they merely represent the views of one of the litigating parties, which taxpayers, courts, and even the respondent may disavow. See Dixon v. United States, 381 U.S. 68, 73-74↩ (1965).
9. Cf. Male v. Commissioner, T.C. Memo. 1971-301, affd. without published opinion 473 F.2d 908↩ (4th Cir. 1973).
10. E.g., Yeckes v. Commissioner, T.C. Memo. 1966-178↩.
11. Cf. also Mitchell v. Commissioner, T.C. Memo. 1972-219↩.